## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 28 2017, 9:14 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark W. Rutherford
Thrasher Buschmann & Voelkel, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas P. Donovan,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 28, 2017

Court of Appeals Case No.
78A01-1705-CR-1013

Appeal from the Switzerland
Circuit Court

The Honorable W. Gregory Coy,
Judge

Trial Court Cause No.
78C01-1406-FC-161

**Najam, Judge.**

# Statement of the Case

[1] Thomas Donovan appeals his conviction for using a device to assist in analyzing the probability of the occurrence of an event relating to a gambling game, a Class D felony, following a bench trial. He presents two issues for our review:

1. Whether the State presented sufficient evidence to support his conviction.

2. Whether the trial court erred when, in its written judgment of conviction, it described Donovan's conviction as use or possession with the intent to use a device to assist in "cheating at gaming."

[2] We affirm and remand with instructions.

# Facts and Procedural History

[3] On June 21, 2014, Donovan was playing five-card-draw poker on a "hundred play slot machine" at Belterra Casino in Florence. Tr. at 5. To play that game, the player "presses [a] button and five cards come up and [the player] decide[s] whether or not . . . to keep any of those and then [the player] can discard whatever [he] choose[s] not to keep and then [he] get[s] new cards[.]" *Id.* The player "can play up to [one] hundred hands . . . on one touch of the button." *Id.* at 5-6. The maximum bet was $50.

[4] While Donovan played, someone with the casino's "surveillance department" called Indiana Gaming Commission Agent Jeffrey Davies to report that "they

had a male individual [later identified as Donovan who] was using something and they weren't sure what it was." *Id.* at 4. Agent Davies walked over to get a closer look at Donovan, and Agent Davies

> could see that [Donovan] had something that appeared cupped in his hand . . . [with] like a counter sticking out at the top. Initially [Donovan] had a piece of paper [and a pen or pencil] laying there on the . . . control panel of the game. . . . [Agent Davies] still didn't know what it was that [Donovan] had [in his hand] and [he] wasn't ready to confront him on it yet. [Agent Davies] wanted to take a little closer look. So [he] responded back to the surveillance room and asked that [they] just monitor for a few minutes and see what was going on.
>
> * * *
>
> Once [Agent Davies] was able to see that [Donovan] was manipulating the device by clicking something on his phone or in his hand . . . , [Agent Davies] made another pass past [Donovan] and [he] . . . noticed that [Donovan] had laid . . . [the] clicker . . . on the deck of the gaming [machine] and it was at that point [Agent Davies] recognized it from past experience . . . [and wanted] to talk to him about it.

*Id.* at 5-6.

[5] Agent Davies picked up the counter and two sheets of paper from the deck of the slot machine and identified himself to Donovan. Agent Davies asked Donovan "what he was doing," and Donovan replied that he was using the counter "to help him track the results of the hands." *Id.* at 7. Agent Davies asked Donovan whether that "helped him decide how to play," and Donovan responded, "Yes." *Id.* Agent Davies asked Donovan to go with him to a

nearby stairwell so that they could talk in a quieter setting, and Donovan agreed. Once in the stairwell, Agent Davies asked Donovan whether he would make a written statement, and Donovan agreed.

[6] Donovan accompanied Agent Davies to his office. Donovan then completed a written statement and *denied* having used the counting device to help him play the slot machine poker game. Donovan stated that the device was "no different than counting on a sheet of paper, in [his] head, or using the points displayed on the player's card display, or a cell phone calculator." State's Ex. 5.

[7] The State charged Donovan with "Use or Possess [sic] with the Intent to Use a Device to Assist in Cheating at Gaming," a Class D felony, under Indiana Code Section 4-33-10-2(3)(C) (2013). Appellant's App. Vol. 2 at 12. At the conclusion of the bench trial, the court stated as follows:

> The things that are proven beyond a reasonable doubt here are pretty clear. The defendant was using a device. He was playing a game at Belterra. What has come to issue here is the interpretation of the statute. . . . So Indiana Code [Section] 4-33-10-2 says "a person who knowingly or intentionally does any of the following commits a Class D Felony" and under paragraph 3, it says "uses or possesses with the intent to use a device to a. either project the outcome of the game, b. keeping track of the cards played, c. analyzing the probability of the occurrence of and event relating game, or d. analyzing the strategy for playing or betting to be used in the game except as permitted by the commission." The Court finds that the evidence here, which shows that there was a device used and it was used to keep track of the number of hands but I note in the notes that were kept here and were one of the exhibits, Exhibit #1, I believe that the evidence establishes beyond a reasonable doubt that the device

was used, at the very least, to assist in keeping track of cards played. Whether that presented an advantage to the player, I don't think the statute requires the Court to find that, it just says "uses or possess with the intent to use a device to assist in keeping track of the cards played." *And it could be used in analyzing the probability of the occurrence of an event relating to a gambling game*. So I do believe that the statute, the State has met its burden here and it has been proven beyond a reasonable doubt that the defendant did commit a Class D Felony as defined by Indiana law at the time. Some judge up the line may say otherwise and that would be fine. But I believe[,] strictly interpreting the statute, a device was used and it was helped to keep track of cards played *and at least assist in the probability of an occurrence relating to the game*. So I'm going to find the defendant guilty of a Class D Felony, use or possess to use a device to assist in cheating at gaming.

Tr. at 50-51 (emphases added). The trial court sentenced Donovan to eighteen months suspended to probation. This appeal ensued.

## Discussion and Decision

### *Issue One: Sufficiency of the Evidence*

[8] Donovan contends that the State presented insufficient evidence to support his conviction. In our review of such claims, "we consider only the evidence and reasonable inferences most favorable to the conviction[,] neither reweighing evidence nor reassessing witness credibility." *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). "We affirm the judgment unless no reasonable factfinder could find the defendant guilty." *Id.*

[9]	To prove that Donovan committed the alleged offense, the State was required to show that Donovan knowingly or intentionally used a mechanical counting device to assist him in analyzing the probability of the occurrence of an event relating to the slot machine poker game he was playing at Belterra. Ind. Code § 4-33-10-2(3)(C). Donovan contends that the State did not present evidence showing that the counting device he used "related" to the poker game. He also contends that the State did not present evidence showing that the slot machine poker game was a "gambling game" as defined in Indiana Code Section 4-33-2-9. We address each contention in turn.

[10]	At trial, the State presented Agent Davies' testimony that Donovan admitted that he was using the counter "to help him track the results of the hands," which, in turn, "helped him decide how to play." Tr. at 7. That evidence, alone, is sufficient to prove that the counting device related to the poker game. To the extent Donovan contends that the State was required to present evidence to explain how the game worked "regarding its gambling aspects," we are not persuaded. Appellant's Br. at 10-11. In any event, Donovan's contention amounts to a request that we reweigh the evidence, which we cannot do.

[11]	Next, Donovan maintains that the State did not prove that the slot machine poker game was a "gambling game" as defined in Indiana Code Section 4-33-2-9. That statute provides that a gambling game "*includes* any game approved by the [Indiana Gaming C]ommission as a wagering device[,]" and Donovan points out that the State did not present evidence that the slot machine poker game he had been playing had been approved by the Commission. (Emphasis

added). But the statute does not limit "gambling games" to *only* those approved by the Commission. Rather, it *includes* such games, but does not exclude gambling games that have not been approved by the Commission. In any event, under Indiana Code Section 4-33-10-2(3)(C), the State was required to show that Donovan was playing a "gambling game." "Gambling" is defined as "the act or practice of betting." Webster's Third New Int'l Dictionary 932 (2002). The State presented evidence that the slot machine poker game Donovan played was a device where bets could be placed, and Agent Davies observed Donovan "adjust[ing] his bet" at one point. Tr. at 11. The State presented sufficient evidence to support Donovan's conviction.

### Issue Two: Judgment of Conviction

[12] Donovan contends that the judgment of conviction "does not provide any citation to an Indiana Code criminal violation for which [he] has been convicted" and "does not conform to the sole charge brought by the State of Indiana" against him. Appellant's Br. at 14. In particular, in its written judgment of conviction, the trial court stated that Donovan was "guilty of the offense Use or Possession with the Intent to Use a Device to Assist in Cheating at Gaming, [a] Class D Felony." Appellant's App. Vol. 2 at 8. But the statute, which was at the time of the instant offense titled "Class D felonies," includes no such descriptor for subsection (3)(C), which is the offense with which

Donovan was charged and convicted. Donovan maintains that this is reversible error.[1]

[13] The State points out that "the statute at issue does not title the actual offense" and acknowledges that "the judgment of conviction could cite to the specific statute to be more clear." Appellee's Br. at 20 n.2. The court's written judgment order is the official trial court record and controlling document regarding the defendant's conviction and sentence. *See Robinson v. State*, 805 N.E.2d 783, 794 (Ind. 2004). We affirm Donovan's conviction, but we remand to the trial court with instructions that the court enter a new judgment of conviction that properly identifies Donovan's conviction under Indiana Code Section 4-33-10-2(3)(C) and states the offense as the use or possession with intent to use a device to assist in analyzing the probability of the occurrence of an event relating to a gambling game. *See* I.C. § 4-33-10-2(3)(C).

[14] Affirmed and remanded with instructions.

Kirsch, J., and Brown, J., concur.

---

[1] To the extent Donovan states that he had the right to be aware of the charges against him and prepare a defense, he does not present cogent argument in support of that contention and it is waived. In any event, our Supreme Court has held that, when a charging information erroneously titles the alleged offense using a label for an offense that does not exist, the charging information by itself does not demonstrate reversible error if the substantive allegation in the charge puts the defendant on notice that the State is actually charging an existing offense. *Head v. State*, 443 N.E.2d 44, 51 (Ind. 1982). Moreover, the State charged Donovan under Indiana Code Section 4-33-10-2(3)(C); the State argued and presented evidence to support the elements of that charge; and the trial court found, at the conclusion of the bench trial, that "a device was used and it . . . helped [Donovan] to keep track of cards played *and at least assist in the probability of an occurrence relating to the game*." Tr. at 51 (emphasis added).